# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1352
_____

Samiul Alim Lesum

*Petitioner*

v.

William P. Barr, Attorney General of the United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: January 14, 2019
Filed: February 15, 2019
_____

Before GRUENDER, WOLLMAN, and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Samiul Alim Lesum filed a petition seeking judicial review of the denial of his application for asylum under 8 U.S.C. § 1158, the denial of his request for withholding of removal under 8 U.S.C. § 1231(b)(3), and the denial of protection under the Convention Against Torture (CAT), 8 C.F.R. § 208.16(c).  Having jurisdiction under 8 U.S.C. § 1252, we deny the petition.

I.

The Department of Homeland Security initiated removal proceedings against Lesum, a native and citizen of Bangladesh. He had been admitted to the United States as a nonimmigrant student. Although his continued enrollment at a college or university was a condition of his student status, he dropped out of school and remained in the country without authorization. After conceding removability, Lesum applied for asylum, withholding of removal, and protection under CAT, claiming he has suffered and will suffer persecution in Bangladesh because he is gay. Specifically, he claimed that, in Bangladesh, he has suffered discrimination and harassment, he was locked in his dorm room by others for several days, and he was sexually abused by his cousin. Morever, he claimed that members of the LGBT community regularly face threats and acts of violence, one of which resulted in the death of a gay rights activist.

After "consider[ing] all of the documents in the record," the Immigration Judge (IJ) denied Lesum all three forms of relief. First, the IJ denied his asylum application as untimely because Lesum failed to file his application "within 1 year after [he] arriv[ed] in the United States." 8 U.S.C. § 1158(a)(2)(B). The IJ found Lesum entered the country as a student on January 8, 2016, and thus should have applied for asylum by January 8, 2017. The IJ found Lesum's student status terminated on September 21, 2016, and Lesum filed his application on June 20, 2017. The IJ noted that "[t]he regulations reflect that a person should file for asylum within a reasonable period of time from a status ending" and that "[t]he comments to the regulations reflect that a reasonable period of time is considered to be approximately six months. Six months from the status ending on September 21, 2016 would have been March 21, 2017." The IJ took into account that Lesum was not placed into removal proceedings until April 24, 2017. Lesum claimed his father's death excused his late filing, but the IJ did not find that credible because his father died on August 21, 2016, one month prior to the termination of his student status. Thus, the IJ found a "six-

month period of time would have been a reasonable period of time for [Lesum] to have [applied for asylum.]"

The IJ also denied Lesum's request for withholding of removal and protection under CAT. The IJ believed that Lesum "has suffered discrimination and harassment and [had] been called names" and that "there is harassment and discrimination regarding gays in Bangladesh." However, the IJ also found that Lesum has never been arrested nor charged with a crime; he was not physically harmed when he was locked in his dorm room and later escaped through a window; he has not been physically harmed by the government in Bangladesh; he has not been physically harmed otherwise in Bangladesh, except for the incident with his cousin, which, though "unfortunate," was not persecution but a crime; that, although "sexual acts between males are illegal," "the law is rarely enforced"; and that, despite Bangladesh being "a conservative society in which homophobic attitudes persist with LGBT persons facing discrimination," "tolerance of LGBT persons is improving." The IJ determined that Lesum "has not suffered past persecution" and that, although Lesum "may fear or may suffer from discrimination and harassment in Bangladesh," he "failed to establish that it is more likely than not that he would be persecuted by the government or by someone that the government is unable or unwilling to control . . . ." The IJ found that, "[a]lthough some LGBT persons have reportedly faced harassment by law enforcement officers, this does not in general amount to persecution or serious harm." For these same reasons, the IJ also determined Lesum "failed to establish that it is more likely than not that he would be tortured by the government or somebody acting with the acquiescence of the government," to warrant relief under CAT.

Lesum appealed the IJ's decision to the Board of Immigration Appeals (BIA), which dismissed the appeal. Lesum argued that the death of his father, which led to his inability to pay for schooling, caused him to lapse into depression, which warranted an extension of more than six months to file for asylum. The BIA found

-3-

"no reason to disturb" the IJ's determination regarding Lesum's untimely asylum application because Lesum had not provided medical evidence to corroborate his claim that he suffered from depression following his father's death. The BIA agreed with the IJ's determination regarding Lesum's request for withholding of removal because Lesum's allegations did not "ris[e] to the level of persecution." Moreover, the BIA noted that the IJ's determination "reflect[ed] a thorough consideration of the evidence presented" and "weighed all relevant evidence," concluding that the "findings are supported by the record." Finally, with respect to protection under CAT, the BIA explained that, "[w]hile the Department of State Country Reports for Bangladesh reveal discrimination, harassment, and sometimes violence against the LGBT community exists, the reports do not support [Lesum]'s claim that he will more likely than not suffer torture with government acquiescence." This petition for review followed.

## II.

Lesum challenges the denial of his application for asylum, the denial of his request for withholding of removal, and the denial of protection under CAT. "Where, as here, the BIA has adopted the Immigration Court's opinion and added reasoning and analysis of its own, we review both decisions." Agha v. Holder, 743 F.3d 609, 614 (8th Cir. 2014) (citing Krasnopivtsev v. Ashcroft, 382 F.3d 832, 837 (8th Cir. 2004)). We review "legal determinations de novo, and factual findings for substantial evidence." Id. (citing Nadeem v. Holder, 599 F.3d 869, 872 (8th Cir. 2010)).

## A.

Lesum first challenges the denial of his asylum application as untimely. Congress, however, has expressly stated "[n]o court shall have jurisdiction to review any determination of the Attorney General" that an asylum application was untimely filed. Burka v. Sessions, 900 F.3d 575, 576 (8th Cir. 2018) (alteration in

-4-

original) (quoting 8 U.S.C. § 1158(a)(3)).  Notwithstanding § 1158(a)(3), "we may still review 'constitutional claims or questions of law raised upon a petition for review.'"  Id. (quoting 8 U.S.C. § 1252(a)(2)(D)).  Lesum argues the IJ committed legal error because it strictly enforced a six-month deadline to apply for asylum after the termination of his student status, without considering whether his longer delay in filing was reasonable under the circumstances.  Pet'r's Br. 15.  We disagree.

An application for asylum must be "filed within 1 year after the date of the alien's arrival in the United States."  8 U.S.C. § 1158(a)(2)(B).  The IJ found Lesum arrived in the country on January 8, 2016, and thus should have applied for asylum by January 8, 2017.  However, he filed his application on June 20, 2017.  There is a statutory exception to the one-year deadline: a late application for asylum may be considered "if the alien demonstrates to the satisfaction of the Attorney General . . . extraordinary circumstances relating to the delay in filing an application within the [one-year] period . . . ."  Id. § 1158(a)(2)(D).  "The maintenance of lawful, non-immigrant status may constitute an 'extraordinary circumstance' excusing an applicant's failure to file within one year of arrival in the United States.  However, an applicant must still file the asylum application within a reasonable period of time following the expiration of lawful status."  James v. Lynch, 627 F. App'x 511, 514 (6th Cir. 2015) (citing 8 C.F.R. § 208.4(a)(5)(iv)); see also Al Ramahi v. Holder, 725 F.3d 1133, 1135 (9th Cir. 2013); Vrljicak v. Holder, 700 F.3d 1060, 1061 (7th Cir. 2012) ("In other words, an alien properly in the United States may request asylum during a 'reasonable' time after authorized status ends, even if the total time between entry and application exceeds one year."); Zhu v. Gonzales, 493 F.3d 588, 594 (5th Cir. 2007).  "[I]t is reasonable for an applicant 'to apply as soon as possible after expiration' of . . . lawful status, and unreasonable to wait 'six months or longer after expiration or termination of status.'"  Al Ramahi, 725 F.3d at 1135 (quoting 65 Fed. Reg. 76121-01, at 76123-24); see also 65 Fed. Reg. 76121-01, at 76123 ("Failure to apply within a reasonable time after expiration of the status would foreclose the person from meeting the statutory filing requirements.").

The IJ noted that "[t]he comments to the regulations reflect that a reasonable period of time is considered to be approximately six months." See 65 Fed. Reg. 76121-01, at 76123-24 ("Clearly, waiting six months or longer after expiration or termination of status [to apply for asylum] would not be considered reasonable."). The IJ found Lesum's student status terminated on September 21, 2016, and six months after that date would have been March 21, 2017. The IJ did not find Lesum's father's death to be a credible excuse for his late filing because his father died on August 21, 2016, one month prior to termination of his student status; thus, she found that a "six-month period of time would have been [] reasonable . . . ." Cf. Khatri v. Holder, 533 F. App'x 17, 19 (2d Cir. 2013) (summary order) (finding no error in agency's determination that applicant's "eight-month delay in filing for asylum after the alleged change in circumstances" was "presumptively unreasonable"); Toj-Culpatan v. Holder, 612 F.3d 1088, 1090 n.2 (9th Cir. 2010) (per curiam) ("[U]nreasonableness is presumed after six months under section 208.4(a)(5)(iv)."). To the extent Lesum asks us to second-guess the IJ's determination of a reasonable period, we cannot do so. Cf. Gumaneh v. Mukasey, 535 F.3d 785, 788 (8th Cir. 2008) (noting that the preclusion of § 1158(a)(3) "extends to the IJ's determination that an applicant has not filed within a reasonable period").

Accordingly, we find no legal error in the IJ's determination that Lesum's application for asylum was untimely.

B.

Next, Lesum challenges the denial of his request for withholding of removal, and the denial of protection under CAT. "We will overturn the IJ's denial of withholding of removal or protection under the CAT only if the evidence is so compelling that no reasonable factfinder would have denied relief." Mompongo v. Gonzales, 406 F.3d 512, 514 (8th Cir. 2005) (citing Ngure v. Ashcroft, 367 F.3d 975, 989, 992 (8th Cir. 2004)). Removal to Bangladesh "must be withheld if [Lesum]

establishe[s] a clear probability of persecution [there]." Agha, 743 F.3d at 615 (internal quotation marks omitted). In other words, for purposes of withholding of removal, Lesum must establish that it is more likely than not that he will suffer persecution for being gay. See Mompongo, 406 F.3d at 514. Additionally, "[t]o qualify for relief under the CAT, [Lesum] must show it is more likely than not that he . . . would be tortured if returned to [Bangladesh]." Agha, 743 F.3d at 615 (internal quotation marks omitted). To constitute "torture" under CAT, the relevant acts "must be 'inflicted by or at the instigation of or with the consent or acquiescence of a public official.'" Miah v. Mukasey, 519 F.3d 784, 788 (8th Cir. 2008) (quoting 8 C.F.R. § 208.18(a)(1)). "A government does not acquiesce in the torture of its citizens merely because it is aware of torture but powerless to stop it, but it does cross the line into acquiescence when it shows willful blindness toward the torture of citizens by third parties." Id. (quoting Mouawad v. Gonzales, 485 F.3d 405, 413 (8th Cir. 2007)).

Lesum argues the IJ and BIA erred in denying his request for withholding of removal because he "provided substantial, credible evidence that the probability of a threat to [his] safety was 'more likely than not,'" pointing to acts of discrimination, threats, and harassment, including "widespread harassment of LGBT persons." Pet'r's Br. 21. Lesum also argues the IJ and BIA erred in denying him protection under CAT because he "established that he has already been targeted for torture" and, if returned to Bangladesh, "it is more likely than not he would suffer similar acts of torture." Id. at 23. In support of both arguments, Lesum specifically points to the time he was sexually abused by his cousin, the time he was locked in his dorm room for several days, and to discrimination and harassment he endured in Bangladesh, including being called names. We find Lesum's arguments unavailing.

First, as the BIA noted and the administrative record confirms, Lesum did not contest the IJ's finding that the criminal acts against Lesum by his cousin did not constitute persecution for purposes of withholding removal. "When an issue is

-7-

abandoned before the BIA, it is not preserved for our review." Nyonzele v. INS, 83 F.3d 975, 984 (8th Cir. 1996) (citing Tejeda-Mata v. INS, 626 F.2d 721, 726 (9th Cir. 1980)). Second, Lesum's brief submitted to the BIA only included an argument that he "suffered persecution by his college classmates" when he was locked in his dorm room for several days; it made no reference whatsoever to the specific acts he puts forward now as evidence of persecution. Thus, the administrative record indicates Lesum only contested one of the IJ's findings—that Lesum's confinement to his dorm room did not constitute persecution—and did not contest any of the IJ's other findings regarding persecution. See id. (finding issue not briefed to BIA has not been preserved for judicial review). "The BIA 'cannot be expected to resolve issues that . . . should have [been] raised, but [were] not.'" Id. (quoting Perez-Rodriguez v. INS, 3 F.3d 1074, 1080 (7th Cir. 1993)). In any event, the specific acts Lesum puts forward as evidence of persecution generally do not rise to the level of persecution. See Agha, 743 F.3d at 617 (finding substantial evidence supported the BIA's conclusion that general allegations of "widespread discrimination" are insufficient to constitute persecution); Quomsieh v. Gonzales, 479 F.3d 602, 606 (8th Cir. 2007) (noting "unfulfilled threats of injury" are insufficient to constitute persecution); Setiadi v. Gonzales, 437 F.3d 710, 713 (8th Cir. 2006) (noting "limited detentions" do not usually constitute persecution); Fisher v. INS, 291 F.3d 491, 497 (8th Cir. 2002) (noting "slurs and harassment from private individuals . . . do not constitute persecution"). Lesum's arguments are devoid of any legal authority stating otherwise.

Finally, a review of the administrative record indicates Lesum did not contest to the BIA the IJ's denial of protection under CAT and, therefore, this issue has been abandoned. See Nyonzele, 83 F.3d at 984. Nevertheless, Lesum has provided no evidence of "torture" as defined by 8 C.F.R. § 208.18(a)(1), much less evidence of "willful blindness" toward the torture of citizens of Bangladesh by third parties. Miah, 519 F.3d at 788.

-8-

Accordingly, in light of the record, including the thorough analyses performed by the IJ and the BIA, and the applicable case law, neither the IJ nor the BIA erred in denying Lesum's request for withholding of removal and in denying him protection under CAT.

## III.

The petition for review is denied.

_____